1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ED ONTIVEROS,                        No.  2:07-cv-1441 JAM DAD P

12              Petitioner,

13        v.                              ORDER

14   R.J. SUBIA, Warden,

15              Respondent.

16

17        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are the parties' supplemental

19   briefs purportedly addressing the issue of equitable tolling of the applicable statute of limitations

20   under the facts of this case.

21        For the reasons set forth below, the undersigned will provide petitioner's counsel one final

22   opportunity to proffer evidence or explain what would be presented by petitioner at an evidentiary

23   hearing that would entitle him to equitable tolling of the applicable statute of limitations.

24                              **BACKGROUND**

25        This case has a lengthy procedural history.  On June 13, 2008, the undersigned issued

26   findings and recommendations recommending that petitioner's petition for writ of habeas corpus

27   be dismissed as time-barred.  (Doc. No. 14.)  On October 2, 2008, those findings and

28   recommendations were adopted in full.  (Doc. No. 16.)  Petitioner appealed and counsel was

1

1   appointed for petitioner on appeal. (Doc. No. 25.) On January 28, 2010, the Ninth Circuit Court

2   of Appeals issued a memorandum affirming the judgment. (Doc. No. 26.) However, on February

3   18, 2010, the Ninth Circuit issued a superseding opinion affirming in part, reversing in part, and

4   remanding the case back to this court "for factual development" with regards to petitioner's

5   equitable tolling claim. See Ontiveros v. Subia, 365 Fed. Appx. 848, 851 (9th Cir. Feb. 18, 2010)

6   (Doc. No. 27.). Specifically, the Ninth Circuit stated the following with respect to petitioner's

7   claim of entitlement to equitable tolling, which he had brought on his own behalf:

8           To qualify for equitable tolling, a litigant "bears the burden of
            establishing two elements: (1) that he has been pursuing his rights
9           diligently, and (2) that some extraordinary circumstance stood in
            his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807,
10          161 L.Ed.2d 669 (2005). The district court found that Ontiveros
            was not entitled to equitable tolling because he "waited almost a
11          year before filing his first state habeas petition." This restates the
            known fact that Ontiveros filed late, but does not properly
12          determine whether he pursued his rights diligently. The district
            court failed to investigate whether Ontiveros diligently attempted to
13          file his state petition.

14          The district court also found that Ontiveros had not demonstrated
            that extraordinary circumstances prevented him from timely filing.
15          The court cites case law holding that a lack of legal sophistication
            or temporary delays in prison law library access are not, by
16          themselves, grounds for equitable tolling. However, the district
            court did not address Ontiveros's claim that his documented
17          learning disability caused his late filing. We have previously held
            that " 'mental incompetency justifies equitable tolling' of the
18          AEDPA statute of limitations." Laws v. Lamarque, 351 F.3d 919,
            923 (9th Cir. 2003) (citing Calderon v. U.S. Dist. Court (Kelly),
19          163 F.3d 530, 541 (9th Cir. 1998) (en banc), overruled in part by
            Woodford v. Garceau, 538 U.S. 202, 206, 123 S. Ct. 1398, 155
20          L.Ed.2d 363 (2003)). The district court also failed to determine the
            extent to which the prison lock-down precluded Ontiveros's access
21          to the law library or to his legal files.

22          We therefore reverse the district court's dismissal of the petition
            and remand for factual development, including an evidentiary
23          hearing, with regard to Ontiveros's equitable tolling claim. See
            Laws, 351 F.3d at 923–925. If the district court determines that
24          equitable tolling is warranted, it should proceed to the merits.
            Otherwise, it should dismiss the petition as untimely.
25

26   Id. at 850-51.

27          On remand the court first addressed respondent's motion to dismiss to the extent it was

28   based on petitioner's alleged failure to exhaust his claims in state court, since that argument had

1    not been addressed earlier in light of the conclusion that the petition was time barred.  The motion

2    to dismiss for failure to exhaust was eventually denied.  (Dkt. Nos. 45 and 46.)  However,

3    petitioner's claims I, III and IV were subsequently summarily dismissed because the court

4    concluded that they failed to state cognizable claims for federal habeas relief.  (Doc. Nos. 47 and

5    60.)  With respect to petitioner's lone remaining claim the court specifically ordered petitioner to

6    file a supplemental brief, "**along with any additional evidence or proffer in support of his**

7    **argument for equitable tolling**" and provided time for a response and a reply.  (Doc. No. 47 at

8    11) (emphasis added).  Both parties have now filed their supplemental briefs.

9                                          **THE PARTIES' ARGUMENTS**

10           It appears that petitioner's counsel may have misapprehended both the nature of the Ninth

11   Circuit remand and the directive set forth in the undersigned's order.  Petitioner's opening

12   supplemental brief is a little over three pages in length, is composed solely of legal argument[1],

13   proffers nor suggests any evidence that would be presented at an evidentiary hearing in support of

14   a claim of entitlement to an evidentiary hearing and, nonetheless, concludes with a request for an

15   evidentiary hearing.

16           In response, counsel for respondent accurately argues that petitioner has failed to offer

17   evidence that he did not understand the need to file his federal habeas petition in a timely manner

18   and, in fact, that petitioner demonstrated he was capable of filing court petitions in other

19   proceedings during the relevant time-frames at issue here.  Counsel for respondent also argues

20   that the periodic lock-downs at his place of confinement about which petitioner complains were

21   brief and that petitioner's access to the law library largely remained on "normal" status

22   throughout the relevant time period.  (Resp't's Supp. Brief at 1-7 & Exs. 1-20.)

23           In reply, petitioner's counsel contends that back on July 18, 2000, a psychologist at Mule

24   Creek State Prison ("MCSP") determined that there was a reasonable possibility that petitioner

25   suffers from a significant learning disability and exempted him from taking any written tests for a

26

27   [1]  Petitioner's counsel repeats petitioner's own assertion that his diminished mental capacity and
     lock-downs at his place of confinement prevented him from timely filing his federal habeas
28   petition.

                                                      3

1    trade at the prison.  Since then, according to petitioner's counsel, other prison officials have also

2    recognized petitioner's learning disability.  (Pet'r's Reply Exs. B-D.)  Petitioner's counsel has

3    also presented the declaration of an inmate who states that he assisted petitioner in the preparation

4    of his legal documents, that this other inmate's law library access was limited or reduced during

5    the period of November 2004 through October 2005 and that his personal opinion is that

6    petitioner has difficulty with the English language and is not able to prepare legal brief on his

7    own.  (Pet'r's Reply Exs. A.)  In his conclusion, however, petitioner's counsel "respectfully

8    requests this Court set an evidentiary hearing to determine whether the 2004 Panel violated Mr.

9    Ontiveros' right to due process and his liberty interest in parole when the Board overruled his

10   objection to the make-up of the members of the Board."  (Pet'r's Reply (Doc. No. 56) at 4.)

11        Of course, counsel's request for evidentiary hearing in his reply goes directly to the merits

12   of petitioner's only remaining claim in this federal habeas action.  Obviously, that is not what the

13   Ninth Circuit remanded for factual development.  The only issue which was subject to remand for

14   potential factual development was the question of whether petitioner could establish that he was

15   entitled to equitable tolling of the applicable statute of limitations.  If not, this court was directed

16   to "dismiss the petition as untimely."  365 Fed. Appx. at 851.  On that issue petitioner's counsel

17   has presented very little other than further argument.  Nonetheless, in light of the remand order

18   the undersigned is reluctant to recommend dismissal of the petition based on untimeliness without

19   providing petitioner's counsel a final opportunity to present or proffer evidence and witnesses he

20   would present at an evidentiary hearing that would establish that petitioner is entitled to equitable

21   tolling of the AEDPA statute of limitations under the facts of his case.

22        Below, the court will provide counsel with direction in determining whether such

23   additional evidence exists or whether he wishes to submit the issue for decision on the present

24   record.

25   I.  Application of §§ 2244(d)(1)(D) & 2244(d)(2)

26        Petitioner's sole remaining claim in this federal habeas action is that the California Board

27   of Parole Hearings was biased against him when it found him unsuitable for parole.  (Pet. at 5.)

28   The parties do not dispute that the AEDPA statute of limitations began to run on November 26,

4

1    2004, and expired one year later on November 25, 2005.  The parties also do not dispute that the

2    statute of limitations ran for 329 days from November 26, 2004, to October 21, 2005 (the "2005

3    period"), when the clock stopped, and the statute of limitations for the filing of petitioner's

4    federal habeas petition was statutorily tolled until February 7, 2007.  The statute of limitations

5    began to run again on February 8, 2007, and expired 36 days later on March 16, 2007.  Petitioner

6    did not file his federal petition until July 7, 2007 (the "2007 period").  Because more than one

7    year had run on the governing statute of limitations, 478 days to be exact, petitioner's federal

8    habeas petition is time-barred, unless he is entitled to equitable tolling.

9    II.  Equitable Tolling Standards

10          The United States Supreme Court has confirmed that the AEDPA statute of limitations "is

11   subject to equitable tolling in appropriate cases."  Holland v. Florida, 530 U.S. 631, 645 (2010).

12   See also Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011); Lakey v. Hickman, 633 F.3d 782,

13   784 (9th Cir.), cert. denied __ U.S. __, 131 S. Ct. 3039 (2011); Porter v. Ollison, 620 F.3d 952,

14   959 (9th Cir. 2010).[2]  "[A] 'petitioner' is 'entitled to equitable tolling' only where he shows '(1)

15   that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

16   in his way' and prevented timely filing."  Holland, 530 U.S. at 649 (quoting Pace v. DiGuglielmo,

17   544 U.S. 408, 418 (2005)).  See also Doe, 661 F.3d at 1011; Lakey, 633 F.3d at 784; Porter, 620

18   F.3d at 959; Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008) ("We have stated that the

19   purpose of the equitable tolling doctrine is to soften the harsh impact of technical rules which

20   might otherwise prevent a good faith litigant from having a day in court . . . .  Equitable tolling is

21   typically granted when litigants are unable to file timely petitions as a result of external

22   circumstances beyond their direct control.") (internal quotation marks and citations omitted).

23   Thus, equitable tolling is appropriate only when external forces, rather than a lack of diligence,

24   account for the failure to file a timely petition.  Velasquez v. Kirkland, 639 F.3d 964, 969 (9th

25   Cir. 2011); Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

26   _____

27   [2] The Ninth Circuit had previously so held.  See Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir.
     2009); Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009); Calderon v. U.S.

28   District Court for the Central District of California (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (en
     banc).

1      Courts are expected to "take seriously Congress's desire to accelerate the federal habeas

2   process." Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1289 (9th Cir. 1997),

3   overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530

4   (9th Cir. 1998). See also Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir.2002) (describing the

5   Ninth Circuit's standard as setting a "high hurdle" to the application of equitable tolling).  To this

6   end, "the circumstances of a case must be 'extraordinary' before equitable tolling can be

7   applied[.]" Holland, 560 U.S. at 652.  Whether a party is entitled to equitable tolling "turns on

8   the facts and circumstances of a particular case." Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir.

9   2003) (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)). See also Holland, 560 U.S.

10   at 654 (leaving "to the Court of Appeals to determine whether the facts in this record entitle

11   Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing,

12   might indicate that respondent should prevail"); Doe, 661 F.3d at 1012 ("[W]hether a prisoner is

13   entitled to equitable tolling under AEDPA will depend on a fact specific inquiry by the habeas

14   court which may be guided by 'decisions made in other similar cases.' ") (citing Holland, 560

15   U.S. at 650).

16   III.  The State of the Record

17      The primary evidence that petitioner refers to in support of his claim of a learning

18   disability is a senior psychologist's determination that petitioner should be exempted from taking

19   written examinations for a prison trade.  However, that determination was made in 2000.  Records

20   that pre-date or post-date the 2005 and 2007 filing periods at issue in this case are of limited

21   relevance in proving that petitioner's disability prevented him from timely filing his federal

22   habeas petition. See Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir.2009) ("After a hearing Laws

23   was adjudicated competent to stand trial in 1993, notwithstanding evidence of serious mental

24   illness.  But that determination has little bearing on his competence vel non during the period

25   1996–2000" — i.e., "the years when his petitions should have been filed."); see also Tyes v.

26   McEwen, No. 2:12-cv-1755 TLN DAD P, 2013 WL 1832713 at *5 (E.D. Cal. May 1, 2013)

27   (medical/mental health reports stating that petitioner functioned at mentally retarded range of

28   intelligence was of limited relevance since the evaluation was conducted in 1988 when petitioner

1   was fourteen years of age); Avila v. MacDonald, No. CV 11–05333–MMM (SH), 2011 WL

2   6937350 at *3 (C.D. Cal. Nov. 1, 2011) (documents from 2004 filed in support of petitioner's

3   claim for equitable tolling have no bearing on petitioner's mental state after his conviction

4   became final in 2008).

5          Even assuming that evidence referred to by petitioner would establish that he suffered

6   from a learning disability during the 2005 and 2007 filing periods applicable to this action, it is

7   well established that, generally speaking, "a pro se petitioner's lack of legal sophistication is not,

8   by itself, an extraordinary circumstance warranting equitable tolling." See Raspberry v. Garcia,

9   448 F.3d 1150, 1154 (9th Cir. 2006). Thus, in rejecting a habeas petitioner's claim for equitable

10  tolling based on a learning disability, one district court recently explained that "neither a habeas

11  petitioner's limited educational skills and resulting limited ability to understand complex legal

12  materials and principles nor the lack of legal assistance constitutes an 'extraordinary

13  circumstance' entitling the petitioner to any equitable tolling of the limitation period." See

14  Howard v. Holland, No. CV 13-8327 MWF (RNB), 2014 WL 3404975 at *9 (C.D. Cal. May 30,

15  2014).

16         Moreover, petitioner has not yet attempted to explain how his learning disability

17  prevented him from timely filing his federal habeas petition. Rather, his counsel merely contends

18  that petitioner's learning disability would "obviously," directly affect his ability to file a federal

19  habeas petition. Such conclusory arguments are insufficient to establish the existence of an

20  "extraordinary circumstances" justifying equitable tolling of the statute of limitations. See Jones

21  v. Busby, No. CV 10-3293-VAP (RNB), 2010 WL 2742213 at *5 (C.D. Cal. May 21, 2010)

22  ("Even accepting as true that the [August 14, 2009] assessment substantiates petitioner's

23  contention that he suffers from a learning disability, the assessment does not substantiate that,

24  during any part of the period from July 27, 2003 (when the limitation period commenced running)

25  to August 17, 2009 (when petitioner filed his first state collateral challenge), petitioner was

26  suffering from a mental illness of sufficient severity to prevent him from managing his affairs, or

27  from understanding his legal rights and acting upon them."); Carpenter v. Clark, No. CIV-S-09-

28  2448 GEB KJM P, 2010 WL 4237707 at *3 (E.D. Cal. Oct. 21, 2010) ("Plaintiff's reliance on his

1  learning disabilities does not support his claim for equitable tolling either.  Most basically,

2  plaintiff has not identified the nature of his disabilities beyond claiming them, and has not

3  attempted to explain how the disabilities prevented his timely filing of his habeas petition.").

4          Insofar as petitioner's learning disability could constitute a form of mental incompetence,

5  the Ninth Circuit has clarified that in order for a petitioner to be entitled to equitable tolling of the

6  AEDPA statute of limitations as a result of an alleged mental impairment, the petitioner must

7  satisfy a two-prong test:

8              (1) First, a petitioner must show his mental impairment was an
               "extraordinary circumstance" beyond his control . . . by
9              demonstrating the impairment was so severe that either

10                 (a) petitioner was unable rationally or factually to
                   personally understand the need to timely file, or
11
                   (b) petitioner's mental state rendered him unable personally
12                 to prepare a habeas petition and effectuate its filing.

13             (2) Second, the petitioner must show diligence in pursuing the
               claims to the extent he could understand them, but that the mental
14             impairment made it impossible to meet the filing deadline under the
               totality of the circumstances, including reasonably available access
15             to assistance.

16  Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010).

17          The Ninth Circuit recently reiterated that the standard that one must meet to be entitled to

18  equitable tolling based on a mental impairment is a "stringent" one.  Yeh v. Martel, 751 F.3d

19  1075 (9th Cir. 2014).  In Yeh, the Ninth Circuit rejected a habeas petitioner's claim that a mental

20  impairment prevented him from timely filing his federal habeas petition because any impairment

21  he suffered from was not so severe to constitute the but-for cause of his delay in filing his

22  petition.  Id. at 1078.  Specifically, the Ninth Circuit explained that during the relevant time

23  period Yeh claimed he suffered from a mental impairment he was nonetheless "able to file a state

24  habeas petition in three different California venues."  Id.  He repeatedly sought administrative and

25  judicial remedies and showed throughout those proceedings that he was aware of basic legal

26  concepts.  Id.  For example, Yeh made requests for assistance from appeals coordinators and an

27  interpreter as well as his public defender after his conviction.  Id.  The Ninth Circuit determined

28  that the record before it refuted any claim that petitioner's impairment was so debilitating that he

8

1   could not "rationally or factually" understand the meaning of a deadline.  Id.  In reaching that

2   conclusion the Ninth Circuit relied on its recent decision in Forbess v. Franke, 749 F.3d 837 (9th

3   Cir. 2014) to illustrate the type of petitioner entitled to equitable tolling based on a mental

4   impairment.  Id.  In Forbess, the petitioner "believed he was working undercover for the FBI, and

5   his trial was a 'sham' orchestrated to lure his ex-wife out of hiding and arrest her for being part of

6   an extensive drug distribution operation."  Id.  The magistrate judge in that case explicitly found

7   that his delusions persisted through the relevant time-frames for purposes of the statute of

8   limitations.  Id.  The Ninth Circuit emphasized that "Yeh's mental impairment and his allegations

9   regarding that impairment come nowhere close to those in Forbess."  Id.

10          Here, during the 2005 period, petitioner filed a separate federal habeas petition, an

11   application to proceed in forma pauperis, a request for counsel, and the form declining to consent

12   to Magistrate Judge jurisdiction in this court.  See Case No. 2:05-cv-1794 FCD KJM P.

13   Petitioner also pursued numerous administrative grievances during the 2005 period and the few

14   months immediately thereafter.  (Resp't's Exs. 5-11.)  Likewise, during the 2007 period,

15   petitioner filed a petition for writ of habeas corpus in the Alameda County Superior Court, the

16   California Court of Appeal, and the California Supreme Court.  See Case No. 2:07-cv-2245 MCE

17   EFB P.  He also had a civil rights action pending in this court in which he filed requests for

18   intervention, a motion for appointment of counsel, a request for dismissal of a defendant, and two

19   motions to compel discovery.  See Case No. 2:06-cv-0233 LKK CMK P.  Petitioner had yet

20   another federal habeas case pending at the time in which he submitted a request for an extension

21   of time, two motions for appointment of counsel, and a traverse.  See Case No. 2:06-cv-2893

22   JCW P.  In fact, petitioner's prison mail log reflects that he was actively communicating with

23   various courts throughout the 2005 and 2007 time-frames.  (Resp't's Ex. 4.)  This present record

24   would not appear to support application of equitable tolling to forgive petitioner's untimely filing

25   in this case.  See also Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (rejecting a claim

26   for equitable tolling based on physical and mental disabilities because the petitioner was capable

27   of filing state court petitions during the relevant period in which he claimed he suffered from the

28   disabilities); Howard v. Holland, No. CV 13-8327 MWF (RNB), 2014 WL 3404975 at *9 (C.D.

1   Cal. May 30, 2014) ("Moreover, commencing September 27, 2009, petitioner did file multiple

2   state habeas petitions directed to his conviction and/or sentence, and petitioner has not even

3   purported to make a showing that his alleged learning disability or mental impairment was

4   significantly worse either prior to or subsequent to the date he filed his first state collateral

5   challenge."); Herrera v. Gipson, No. CV 12-9818-JAK (DTB), 2013 WL 3667046 at *4 (C.D.

6   Cal. July 12, 2013) ("Given that petitioner has been able to file numerous well-pled pro se habeas

7   petitions, the Court finds that petitioner's learning disability, even if true, would not entitle him to

8   equitable tolling."); Payne v. Gipson, No. ED CV 12–1337–CAS (SP), 2013 WL 693011 at *6

9   (C.D. Cal. Jan. 15, 2013) ("Although petitioner's papers indicate he never personally prepared a

10  habeas petition, petitioner admittedly understood that he needed 'to go [through] the courts to

11  obtain relief' and sought the assistance of three different inmates to file four habeas petitions.  In

12  other words, petitioner's mental state did not 'interfere [ ] with the ability to understand the need

13  for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the

14  petitioner does secure.'") (quoting Bills, 628 F.3d at 1100); Matthews v. Curry, No. SACV 05–

15  780–PA (MAN), 2011 WL 5975257 at *12 (C.D. Cal. Aug. 18, 2011) ("Indeed, the record

16  demonstrates that Petitioner understood the need to pursue habeas relief and took steps to do so,

17  whether on his own or with the assistance of others."); Ontiveros v. Martel, No. CIV S-09-1161

18  MCE EFB P, 2010 WL 2889742, at * (E.D. Cal. July 21, 2010) (rejecting this same petitioner's

19  claim for equitable tolling based on his learning disability because his "extensive litigation

20  history" is inconsistent with the notion that petitioner's learning disability was the "but for" cause

21  of his untimeliness.").  Cf. Stancle v. Clay, 692 F.3d 948, 959 (9th Cir. 2012) ("the petitioner

22  must show diligence in seeking assistance with what he could not do alone"); Bills, 628 F.3d

23  1101 ("the petitioner must diligently seek assistance and exploit whatever assistance is reasonably

24  available").

25       Finally, the psychological evaluations prepared for the Board in 2006, and now referred to

26  by petitioner's counsel, determined that petitioner had "good abstract thinking" and that his

27  "thought processes were logical and coherent."  Petitioner described his learning disability as

28  difficulty with short-term memory but explained that with enough time he could study and

1   remember information.  He also maintained that he was "able to write very well (as evidenced by

2   his legal briefs)."  (Resp't's  Ex. 13.)

3         The court also notes that a fellow inmate's unavailability to assist a habeas petitioner or a

4   petitioner's separation from his "jailhouse lawyer" does not justify equitable tolling.  See Chaffer

5   v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (rejecting a claim for equitable tolling based on

6   "reliance on helpers who were transferred or too busy to attend to his petitions" because "these

7   circumstances are hardly extraordinary given the vicissitudes of prison life"); Adkins v.

8   Hedgepath, No. CV 08-3010-PA (JTL), 2009 WL 424343 at *8 (C.D. Cal. Feb. 19, 2009)

9   ("Petitioner's lack of legal assistance and separation from his inmate assistant do not justify

10  equitable tolling."); Roque v. Clark, No. CV 07-4485 DOC (FFM), 2008 WL 660075 at *5 n.9

11  (C.D. Cal. Mar. 7, 2008) ("[P]etitioner would state no basis for equitable tolling based on the

12  assistance, competent or otherwise, of a fellow inmate.  It is petitioner, not the fellow inmate, who

13  remains charged with the responsibility of meeting any applicable procedural requirements."); see

14  also White v. Dickinson No. 1:10-CV-02121 AWI GSA HC, 2011 WL 2946359 at *4 (E.D. Cal.

15  July 21, 2011) ("Petitioner did seek and obtain assistance of a fellow inmate.  Therefore,

16  Petitioner fails to demonstrate that his alleged mental impairment was an extraordinary

17  circumstance so severe as to render him unable rationally or factually to understand the need to

18  timely file, prepare a petition, effectuate its filing, or seek assistance in the preparation of the

19  petition.").

20        With respect to lock downs and equitable tolling, counsel for petitioner has not yet

21  submitted any specific factual or evidentiary support of the claim that prison lock-downs

22  prevented petitioner from timely filing his federal habeas petition.  See Miranda v. Castro, 292

23  F.3d 1063, 1065 (9th Cir. 2002) (habeas petitioner has "burden of showing that [the]

24  extraordinary exclusion [of equitable tolling] should apply to him.").  On the other hand, counsel

25  for respondent has detailed the brief lock-downs that took place at MCSP during the two relevant

26  time periods.  During the relevant period in 2005, there were two lock-downs in January, two

27  lock-downs in February, one lock-down in September, and one lock-down in October.  These

28  lock-downs lasted from one day to a little more than one week.  During the relevant period in

1   2007, there was one lock-down that lasted a little more than one week.  During most of the lock-

2   downs, however, access to the law library was unaffected.  (Resp't's Exs. 14-20.)

3        Ordinary prison limitations on a habeas petitioner's access to the law library and copier

4   are neither "extraordinary" nor make it "impossible" for a petitioner to file his habeas petition in a

5   timely manner.  See Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009); United States v. Van

6   Poyck, 980 F. Supp. 1108, 1111 (C.D. Cal. 1997) ("Brief security lockdowns, . . . , could hardly

7   be characterized as an extraordinary circumstance.").  Moreover, litigation conduct and pursuit of

8   administrative appeals during the same time period that a habeas petition is due serves to refute

9   claims that any brief lock-downs or limitations on prison law library hours prevented one from

10  timely filing a federal habeas petition.

11  **CONCLUSION**

12       Accordingly, IT IS HEREBY ORDERED that within fourteen days of the filing and

13  service of this order petitioner's counsel shall clearly specify whether petitioner still seeks an

14  evidentiary hearing on the sole issue of equitable tolling.  If petitioner still requests an evidentiary

15  hearing, his counsel shall state with specificity the evidence that he intends to present at that

16  hearing including a description of the documents he would offer into evidence and shall identify

17  any live witnesses he would call along with a description of the testimony he anticipates they

18  could give with respect to the issue of equitable tolling.  If petitioner's counsel believes that a live

19  evidentiary hearing is not needed and he wishes only to present additional documents for the

20  court's consideration of the issue of equitable tolling, he shall specify the nature on content of

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

those additional documents.  Finally, if petitioner's counsel wishes to submit the motion to

dismiss based on the current record, he shall explicitly so state.[3]

Dated:  December 9, 2014

_____

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
onti1441.157b

---

[3]  The undersigned does note that a great deal of time and energy has already been consumed addressing issues of exhaustion, timeliness and the like in this action.  As is so often the case, had the court been allowed to address the merits of petitioner's claims, this habeas action would have undoubtedly been long since concluded.  Of course, the decision of whether to continue to pursue dismissal based on the statute of limitations is left to respondent.