UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ED ONTIVEROS,

          Petitioner,

    v.

R. J. SUBIA, Warden,

          Respondent.

No. 2:07-cv-1441 JAM DAD P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole for two years at his parole consideration hearing held on July 28, 2004.  Petitioner claims that the Board violated his right to due process and his "civil liberty" interest in parole as guaranteed by the Fourteenth Amendment because the Board members were arbitrary, unfair, biased, and unskilled in weighing the evidence before them.  The matter has been fully briefed by the parties and is submitted for decision.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

Petitioner is confined pursuant to a 1984 judgment of conviction entered against him in the Alameda County Superior Court following his conviction on a charge of first degree murder.

1   (ECF No. 1 at 1.)  Pursuant to that conviction, petitioner was sentenced to twenty-five years to

2   life in state prison.  (Id.)  On July 28, 2004, the Board conducted a parole hearing and found

3   petitioner unsuitable for release on parole.  Petitioner appeared at and participated in that parole

4   hearing.  (ECF No. 70-2 at 80, et seq.)  He was also represented by counsel at the hearing.  (Id at

5   78.)  Following deliberations held at the conclusion of that hearing, the Board panel announced

6   their decision to deny petitioner parole for two years as well as the reasons for that decision.

7   (ECF No. 1 at 25-32.)

8        Petitioner filed several petitions seeking habeas relief in state court challenging the

9   Board's 2004 decision.  Applying the mailbox rule, see Houston v. Lack, 487 U.S. 266, 276

10  (1988), petitioner filed a petition for writ of habeas corpus in the Amador County Superior Court

11  on October 21, 2005.  That court transferred the case to the Alameda County Superior Court

12  which denied habeas relief on the ground that the petition failed to state a prima facie case for

13  relief.  On or about January 2, 2006, petitioner filed an amended petition in the Alameda County

14  Superior Court.  On January 6, 2006, that court denied the petition, again on the ground that it

15  failed to state a prima facie case for relief.

16       On January 16, 2006, petitioner filed a petition for writ of habeas corpus in the California

17  Court of Appeal for the First Appellate District.  On February 9, 2006, the California Court of

18  Appeal denied that petition, explaining that petitioner was required to provide the court with a

19  copy of the transcript of the parole hearing at which the challenged Board decision was issued.

20  Petitioner subsequently submitted a transcript of the parole hearing and, on July 31, 2006, the

21  California Court of Appeal summarily denied habeas relief.  On July 16, 2006, petitioner filed a

22  petition for writ of habeas corpus in the California Supreme Court.  That court summarily denied

23  the petition on February 7, 2007.

24       Petitioner commenced this federal habeas proceeding by filing his petition on July 7,

25  2007.  On April 2, 2008, respondent filed a motion to dismiss arguing:  (1) the petition is

26  untimely; and (2) petitioner failed to exhaust his claims in state court prior to seeking federal

27  habeas relief.  On June 13, 2008, the undersigned recommended that respondent's motion to

28  dismiss due to the untimeliness of the petition be granted, rejecting petitioner's argument that he

1    was entitled to both statutory and equitable tolling of the statute of limitations.  The undersigned

2    declined to address respondent's alternative argument that the federal habeas petition should be

3    dismissed due to a lack of exhaustion of the claims for relief in state court in light of the finding

4    that the federal petition was untimely filed.  Those findings and recommendations were adopted

5    by the assigned District Judge on October 2, 2008.  On October 22, 2008, a certificate of

6    appealability was issued.  On March 12, 2009, counsel was appointed for petitioner on appeal.

7            On February 18, 2010, the Ninth Circuit Court of Appeals affirmed the finding that

8    petitioner was not entitled to statutory tolling but reversed and remanded the case for factual

9    development with regard to petitioner's claim that he was entitled to equitable tolling of the

10   statute of limitations.  Specifically, the Ninth Circuit directed that on remand this court should

11   determine whether petitioner's referred-to learning disability or prison lock-downs prevented him

12   from timely-filing his federal petition, thereby entitling him to equitable tolling of the applicable

13   statute of limitations.  The mandate was issued on March 12, 2010.

14          On March 18, 2010, respondent requested that this court take judicial notice of the

15   pending motion to dismiss and pointed out that the court had not yet ruled on that motion to the

16   extent it was based upon the argument that petitioner had also failed to exhaust his claims by

17   properly presenting them to the state courts prior to seeking federal habeas relief.  Subsequently,

18   this court established a briefing schedule with respect to the exhaustion issue.

19          On February 8, 2011, the undersigned recommended that respondent's motion to dismiss

20   due to lack of exhaustion be denied.  In so doing, the undersigned determined that petitioner had

21   raised all four of his present claims for relief in his state habeas petition which the California

22   Supreme Court had summarily denied.  Those February 8, 2011 findings and recommendations

23   were adopted in full by the assigned District Judge on March 28, 2011.

24          On October 2, 2012, the undersigned recommended that three of petitioner's claims

25   (claims I, III and IV) be summarily dismissed because they failed to state a cognizable claim for

26   /////

27   /////

28   /////

3

1   federal habeas relief.[1]  Those findings and recommendations were adopted in full by the assigned

2   District Judge on April 1, 2013, and petitioner's claims I, III and IV were dismissed.  As a result,

3   petitioner's sole remaining claim for relief before this court is that the 2004 parole suitability

4   decision violated his right to due process because the Board members were biased against him

5   and were arbitrary, unfair, and unskilled in weighing the evidence before them in his case.

6          The undersigned subsequently scheduled an evidentiary hearing on the issue of whether

7   petitioner was entitled to equitable tolling of the applicable statute of limitations.  However, on

8   March 12, 2015, respondent filed a request to withdraw his motion to dismiss the petition as

9   untimely.  By order dated March 17, 2015, respondent's request for withdrawal was granted, the

10  motion to dismiss was deemed withdrawn, and the evidentiary hearing on the issue of the

11  equitable tolling was vacated.  Respondent filed an answer to petitioner's habeas petition on

12  March 25, 2015.  On April 27, 2015, petitioner filed a traverse.

13  **II.  Standard of Review Applicable to Habeas Corpus Claims**

14         An application for a writ of habeas corpus by a person in custody under a judgment of a

15  state court can be granted only for violations of the Constitution or laws of the United States.  28

16  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

17  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

18  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

19         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

20  corpus relief:

21              An application for a writ of habeas corpus on behalf of a person in
                custody pursuant to the judgment of a State court shall not be
22              granted with respect to any claim that was adjudicated on the merits
                in State court proceedings unless the adjudication of the claim -
23

24                  (1) resulted in a decision that was contrary to, or involved
                        an unreasonable application of, clearly established
25                      Federal law, as determined by the Supreme Court of the
                        United States; or

26  /////

27  _____

28  [1]  At that same time the undersigned requested additional briefing from the parties on the subject of equitable tolling.

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1  concludes in its independent judgment that the relevant state-court decision applied clearly

2  established federal law erroneously or incorrectly.  Rather, that application must also be

3  unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

4  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

5  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

6  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

7  'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

8  Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

9  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

10  must show that the state court's ruling on the claim being presented in federal court was so

11  lacking in justification that there was an error well understood and comprehended in existing law

12  beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

13    If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

14  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

15  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

16  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

17  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

18  de novo the constitutional issues raised.").

19    The court looks to the last reasoned state court decision as the basis for the state court

20  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

21  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

22  previous state court decision, this court may consider both decisions to ascertain the reasoning of

23  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

24  federal claim has been presented to a state court and the state court has denied relief, it may be

25  presumed that the state court adjudicated the claim on the merits in the absence of any indication

26  or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption

27  may be overcome by a showing "there is reason to think some other explanation for the state

28  court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

6

1   (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

2   does not expressly address a federal claim, a federal habeas court must presume, subject to

3   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

4   ___, 133 S. Ct. 1088, 1091 (2013).

5        Where the state court reaches a decision on the merits but provides no reasoning to

6   support its conclusion, a federal habeas court independently reviews the record to determine

7   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

8   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

9   review of the constitutional issue, but rather, the only method by which we can determine whether

10  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

11  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

12  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

13       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

14  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

15  just what the state court did when it issued a summary denial, the federal court must review the

16  state court record to determine whether there was any "reasonable basis for the state court to deny

17  relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

18  have supported, the state court's decision; and then it must ask whether it is possible fairminded

19  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

20  decision of [the Supreme] Court."  562 U.S. at 102.  The petitioner bears "the burden to

21  demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v.

22  Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

23       When it is clear, however, that a state court has not reached the merits of a petitioner's

24  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

25  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

26  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

27  /////

28  /////

7

1    **III.  Scope of Review Applicable to Due Process Challenges to the Denial of Parole**

2         The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives

3 a person of life, liberty, or property without due process of law.  A litigant alleging a due process

4 violation must first demonstrate that he was deprived of a liberty or property interest protected by

5 the Due Process Clause and then show that the procedures attendant upon the deprivation were

6 not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-

7 60 (1989).

8         A protected liberty interest may arise from either the Due Process Clause of the United

9 States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

10 expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221

11 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

12 Constitution does not, of its own force, create a protected liberty interest in a parole date, even

13 one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

14 Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

15 person to be conditionally released before the expiration of a valid sentence.")  However, a state's

16 statutory scheme, if it uses mandatory language, "creates a presumption that parole release will be

17 granted" when or unless certain designated findings are made, and thereby gives rise to a

18 constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

19         California's parole scheme gives rise to a liberty interest in parole protected by the federal

20 Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir.

21 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v. Cooke,

22 562 U.S. 216, 219-20 (2011) (finding the Ninth Circuit's holding in this regard to be a reasonable

23 application of Supreme Court authority); Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011)

24 ("[Swarthout v.] Cooke did not disturb our precedent that California law creates a liberty interest

25 in parole.")  In California, a prisoner is entitled to release on parole unless there is "some

26 evidence" of his or her current dangerousness.  In re Lawrence, 44 Cal. 4th 1181, 1205-06, 1210

27 (2008); In re Rosenkrantz, 29 Cal. 4th 616, 651-53 (2002).

28 /////

8

1   In Swarthout, the Supreme Court reviewed two cases in which California prisoners were

2   denied parole - in one case by the Board, and in the other by the Governor after the Board had

3   granted parole.  Swarthout, 562 U.S. at 219-20.  The Supreme Court noted that when state law

4   creates a liberty interest, the Due Process Clause of the Fourteenth Amendment requires fair

5   procedures, "and federal courts will review the application of those constitutionally required

6   procedures."  Id. at 220.  The Court concluded that in the parole context, however, "the

7   procedures required are minimal" and that the "Constitution does not require more" than "an

8   opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

9   Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

10  decisions that went beyond these minimal procedural requirements and "reviewed the state

11  courts' decisions on the merits and concluded that they had unreasonably determined the facts in

12  light of the evidence."  Swarthout, 562 U.S. at 220.  In particular, the Supreme Court rejected the

13  application of the "some evidence" standard to parole decisions by the California courts as a

14  component of the federal due process standard.  Id. at 220-21.  See also Pearson, 639 F.3d at

15  1191.

16  **IV.  Arguments of the Parties and Analysis**

17  As explained above, petitioner's sole remaining claim for federal habeas relief before this

18  court is that at his 2004 parole suitability hearing the Board violated his right to due process under

19  the Fourteenth Amendment because the Board members were arbitrary, unfair, biased, and

20  unskilled in weighing the evidence before them.  (ECF No. 1 at 4.)  In his federal habeas petition,

21  petitioner contends that he can "never get a fair hearing" before a Board composed of "persons

22  appointed by political favor comprised of homicide detectives, crime victim backgrounds, ex-

23  politicians between offices, all with an agenda against the setting of a parole date."  (Id.)

24  Petitioner asserts that "the 2004 hearing Panel was unconstitutionally biased."  (ECF No. 71 at 3.)

25  He argues that the Board demonstrated an inability to provide an "individualized inquiry into the

26  facts of the case" by relying on "so-called facts that are clearly not supported by the evidence."

27  (Id. at 5.)  Petitioner further argues that the conclusions reached by the Board in his case "are

28  contrary to every bit of evidence in the record."  (Id.)  Petitioner claims that he is entitled to a new

9

1  parole consideration hearing before unbiased decisionmakers.  (Id. at 6.)  Finally, he concedes

2  that the remedy for the alleged constitutional violation that occurred is not an order requiring his

3  "immediate release."  (ECF No. 71-1 at 3.)

4      Petitioner has attached to his traverse documents reflecting that presiding Board

5  Commissioner Welch had previously served as the Facility Captain and on the Classification

6  Committee at California State Prison – Sacramento in 1996 and 1997 during the time petitioner

7  was incarcerated there.  Petitioner argues that this fact "in and of itself [calls] into doubt any

8  cloak of impartiality."  (Id. at 5.)  Petitioner argues, "thus, he [Commissioner Welch] personally

9  knew Mr. Ontiveros and did not afford him any impartiality in conducting the hearing or in

10  rendering the Board's decision."  (Id.)

11      Petitioner notes that he objected to the impartiality of the Board members at the beginning

12  of his 2004 parole suitability hearing.  Specifically, when he was asked whether he had "any

13  reason to believe that the Panel members would not be fair and impartial to you," petitioner

14  responded in the affirmative, stating that "as long as I've been in this facility I've never seen a

15  lifer get a parole date."  (ECF No. 70-2 at 98-99.)  Petitioner elaborated:

16      This is a programming facility where a lot of inmates have been
        programming for a lot of years, and they've gained a lot of
17      certificates and chronos.  And we've discussed this on the yard, and
        I believe that I will not get a fair hearing because nobody has never
18      gotten a parole date out of this facility whereas you have all of the
        other mainlines, general populations are always going at it left and
19      right and they don't have a chance.  I haven't ever heard of a date,
        that I've heard of, get a parole date.  So, it's pretty much biased and
20      prejudicial against me.

21  (Id. at 99.)  Petitioner concluded his remarks at the hearing by stating, "no inmate on this yard has

22  got one parole date."  (Id. at 101.)

23      The record reflects that Commissioner Welch overruled petitioner's objection to the Board

24  on the stated grounds.  (Id.)  He informed petitioner that he had "sat on Panels at this institution

25  where inmates have received dates."  (Id.)  He also noted that the Governor had approved "a lot

26  of the dates that's been approved."  (Id.)  Commissioner Welch told petitioner that "when I look

27  at your file if you're suitable for parole, I'll give you a parole date."  (Id. at 100.)  Commissioner

28  Starn remarked that he agreed with Commissioner Welch's comments, and noted that he had also

recommended granting parole to several prisoners.  (Id. at 100-01.)  Petitioner argues, however, that his counsel's objection on the ground of bias "was overruled even in the face of Commissioner Welch's connection to Mr. Ontiveros which was never disclosed on the record." (ECF No. 71-1 at 5.)

Petitioner also points out that his attorney raised an objection at his parole hearing to inclusion in the record of petitioner's two prior prison disciplinary convictions, both of which had been dismissed after successful administrative appeals.  (ECF No. 71-1 at 5; ECF No. 70-2 at 104-05.)  Petitioner's counsel argued that those disciplinary reports "would be overly prejudicing the Panel."  (ECF No. 70-2 at 105.)  Petitioner's counsel also objected to consideration of evidence of a comment by a prison lieutenant about petitioner based on those two disciplinary convictions.  (Id. at 106-07.)  However, Commissioner Welch agreed with counsel's arguments and sustained his objection to the inclusion of this information in the record, stating that the Board would not consider these materials in reaching its parole suitability decision in petitioner's case.  (Id.)  Petitioner also objected to the fact that documents containing favorable information had not been included in the record until his counsel made copies of them and forwarded them to the Board.  (ECF No. 71-1 at 5; ECF No. 70-2 at 130-31.)  Petitioner argues that the fact that unfavorable information was improperly included in the materials submitted to the Board, but that information favorable to him was withheld, is further evidence of overall bias on the part of the Board.  (ECF No. 71-1 at 5.)

In addition, petitioner complains that the Board ignored information indicating that he suffered from a learning disability, improperly focused on his test scores despite petitioner's learning disability and his difficulty in taking tests, and relied on an outdated psychological report in finding him unsuitable for parole.  (Id. at 5-6.)  Petitioner argues that the Panel's "actions, conduct and ultimate findings, taken as a whole, rely entirely upon speculation, hunch, intuition and/or vindictiveness, tainted by the previously described bias."  (Id. at 6.)  Petitioner concludes by arguing that "if the hearing was not fair, no amount of evidence is sufficient to support the outcome."  (Id.)

/////

11

A. **Subject Matter Jurisdiction**

Before turning to petitioner's remaining claim, the court must first address an argument raised by respondent in its answer.  Specifically, in the answer filed in this action respondent argues that the court lacks jurisdiction over the pending habeas petition because petitioner's success on his claim that his due process right were violated by the Board's denial of parole would not necessarily accelerate his release from prison.  (ECF No. 70 at 3.)  Respondent notes that petitioner is challenging only the process used to find him unsuitable for parole, i.e., the impartiality of the Board members, and not the ultimate issue of whether he is entitled to be found suitable for parole and released from prison.  (Id.)  Thus, according to respondent, if petitioner's due process argument was successful, he would be entitled only to a new parole consideration hearing before an impartial panel and not release from prison.  (Id.)  In support of these arguments, respondent cites the Supreme Court's decisions in Skinner v. Switzer, 562 U.S. 521 (2011), Wilkinson v. Dotson, 544 U.S. 74 (2005), and Preiser v. Rodriguez, 411 U.S. 475, 484 (1973), contending that they compel the conclusion that the claim presented by petitioner here fall outside the jurisdiction of habeas review and that relief be denied on that basis.

Petitioner counters that his claim is properly presented by way of application for habeas relief because "a finding that the Board was unconstitutionally biased, will at minimum result in a new hearing, made up of a new Panel, which undoubtedly would reduce Mr. Ontiveros' incarceration when he is found suitable for parole." (ECF  No. 71 at 3.)  Petitioner also notes that, since the passage of Marsy's Law in 2008 amending California Penal Code § 3041.5, "inmates are no longer afforded yearly parole hearings and in fact now must wait a minimum of three (3) years between each parole hearing if not longer."  (Id.)  Petitioner argues that granting him a new parole suitability hearing now, as opposed to requiring him to wait three years pursuant to amended Penal Code § 3041.5, "has the potential of shortening Mr. Ontiveros' incarceration."  (Id. at 4.)

When a prisoner challenges the fact or duration of his custody and a determination of his action may result in plaintiff's entitlement to an earlier release, his sole federal remedy is a writ of habeas corpus.  Preiser, 411 U.S. at 475; Young v. Kenny, 907 F.2d 874, 875 (9th Cir. 1990).  On

1   the other hand, the proper mechanism for raising a federal challenge to conditions of confinement

2   is through a civil rights action pursuant to 42 U.S.C. § 1983.  Badea v. Cox, 931 F.2d 573, 574

3   (9th Cir. 1991).

4          The question of whether a habeas petitioner's claim bears a sufficient nexus to the

5   duration of his custody to support habeas jurisdiction in any particular context has often been the

6   subject of debate.  In Skinner v. Switzer the Supreme Court again confronted the question,

7   "[w]hen may a state prisoner, complaining of unconstitutional state action, pursue a civil rights

8   claim under § 1983, and when is habeas corpus the prisoner's sole remedy?"  131 S. Ct. at 1298.

9   In that case the Court considered a prisoner's lawsuit against a district attorney for failing to

10   provide DNA testing the prisoner requested.  Id. at 1295.  The Court concluded that the prisoner

11   could assert the claim in a § 1983 action rather than in a habeas petition because a judgment

12   ordering DNA testing would not necessarily implicate whether the prisoner were lawfully in state

13   custody nor spell the prisoner's speedier release.  Id. at 1293.  In Wilkinson v.Dotson, the

14   Supreme Court held that inmates were not required to bring their challenges to the

15   constitutionality of state parole procedures in habeas petitions exclusively, but could pursue relief

16   by way of a § 1983 action because their claims did not implicate "the core of habeas corpus."

17   544 U.S. at 82.  In Preiser v. Rodriguez, the Supreme Court had held that habeas corpus was the

18   exclusive remedy in a lawsuit challenging the loss of time credits that, if successful, would result

19   in the petitioners' immediate release from prison.  411 U.S. at 487-88.  The court reasoned that

20   because the prisoners in that case were seeking relief that would result in immediate release from

21   prison, their claims "fell squarely within [the] traditional scope of habeas corpus."  Id. at 487.

22          Most recently, the Ninth Circuit addressed this jurisdictional question once again.

23   Relying on the Supreme Court's decision in Skinner, the court concluded that "a claim

24   challenging prison disciplinary proceedings is cognizable in habeas only if it will 'necessarily

25   spell speedier release' from custody, meaning that the relief sought will either terminate custody,

26   accelerate the future date of release from custody, or reduce the level of custody" (emphasis in

27   original).  Nettles v. Grounds, ___ F.3d ___, ___, 2015 WL 3406160, *1 (9th Cir. May 28,

28   2015).  In so concluding, the majority in Nettles held that prior Ninth Circuit precedent

13

1  formulating the standard with respect to habeas jurisdiction more generously were no longer valid

2  in light of the Supreme Court's decision in <u>Skinner</u>.  <u>Id</u>. at *6-7.  <u>But see Id</u>. at *11-15 (Murgia, J.

3  concurring in part, dissenting in part) ("I disagree with the majority that the Supreme Court

4  expressly "rul[ed]" on the outer limits of habeas jurisdiction" in <u>Skinner v. Switzer</u>[.]")

5          In the present case, petitioner's success on his claim of Board bias cannot be said to

6  "necessarily" result in his speedier release from custody.  Contending that petitioner would

7  actually be found suitable for release on parole after a new suitability hearing before a different

8  Board is based upon pure speculation.  However, as of the date of these findings and

9  recommendations, the decision in <u>Nettles</u>, which was decided in the context of a habeas challenge

10  to a prison disciplinary conviction, has not been extended to the parole suitability context.  <u>See</u>

11  <u>McQuillion v. Schwarzenegger</u>, 369 F.3d 1091, 1098-99 (9th Cir. 2004) ("Bias on the part of the

12  Governor, the Board and the Attorney General cannot be redressed by an injunction ordering

13  those state officials to comply with state law.  [citation omitted].  The effect of a purportedly

14  biased decision resulting in a constitutional violation could be considered by a federal court if

15  contested in a properly exhausted habeas petition.").  Moreover, none of the Supreme Court's

16  decisions in <u>Skinner</u>, <u>Dotson</u>, and <u>Preiser</u>, involved a due process challenge to a parole decision.

17  Most importantly, in <u>Swarthout v. Cooke</u> the Supreme Court recognized that a prisoner's claim

18  challenging on due process grounds the denial of parole are cognizable in a federal habeas action.

19  562 U.S. at 219-20.  Specifically, the Supreme Court stated:

20              Here, the Ninth Circuit held that California law creates a liberty
                interest in parole, <u>see</u> 606 F.3d, at 1213.  While we have no need to
21              review that holding here, it is a reasonable application of our cases.
                <u>See</u> Board of Pardons v. Allen, 482 U.S. 369, 373–381, 107 S. Ct.
22              2415, 96 L.Ed.2d 303 (1987); <u>Greenholtz v. Inmates of Neb. Penal
                and Correctional Complex</u>, 442 U.S. 1, 12, 99 S. Ct. 2100, 60
23              L.Ed.2d 668 (1979).

24              Whatever liberty interest exists is, of course, a state interest created
                by California law. There is no right under the Federal Constitution
25              to be conditionally released before the expiration of a valid
                sentence, and the States are under no duty to offer parole to their
26              prisoners. <u>Id</u>., at 7, 99 S. Ct. 2100.  When, however, a State creates
                a liberty interest, the Due Process Clause requires fair procedures
27              for its vindication — <u>and federal courts will review the application
                of those constitutionally required procedures</u>.  In the context of
28              parole, we have held that the procedures required are minimal.

                                        14

1   Id. (emphasis added).

2         In reliance on the Supreme Court's decision in Swarthout and in light of the context in

3   which Nettles was decided by the Ninth Circuit, the undersigned will assume that this court has

4   jurisdiction over petitioner's due process claim as presented in his petition for federal habeas

5   relief.  Below that claim will be addressed on the merits.

6         **B. Petitioner's Due Process Claim**

7         The Ninth Circuit has acknowledged that California inmates have a due process right to

8   parole consideration by neutral decision-makers.  See O'Bremski v. Maass, 915 F.2d 418, 422

9   (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a Board that [is] free

10  from bias or prejudice"); see also Venegas v. Davis, CV 13–4233–DDP (MAN), 2013 WL

11  5434240, *5 (C.D. Cal. Sept. 26, 2013) ("The requirement of a neutral and detached hearing body

12  or adjudicator applies in the parole setting.").  Accordingly, parole board officials owe a duty to

13  potential parolees "to render impartial decisions in cases and controversies that excite strong

14  feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v. Procunier, 641 F.2d

15  1295, 1303 (9th Cir. 1981)).  See also Schweiker v. McClure, 456 U.S. 188, 195 (1982) ("[D]ue

16  process demands impartiality on the part of those who function in judicial or quasi-judicial

17  capacities.")[3]

18        Administrative adjudicators are presumed to act with honesty and integrity.  See

19  Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 496-97 (1976).  To

20  overcome this presumption, a petitioner alleging bias "must show that the adjudicator has

21  prejudged or reasonably appears to have prejudged, an issue."  Stivers v. Pierce, 71 F.3d 732, 741

22  (9th Cir. 1995) (internal quotations omitted).  A petitioner may make this showing in two ways.

23  First, "the proceedings and surrounding circumstances may demonstrate actual bias on the part of

24  the adjudicator."  Id.  Second, a petitioner may show that "the adjudicator's pecuniary or personal

25  interest in the outcome of the proceedings . . . create[d] an appearance of partiality that violates

26  _____

27  [3]  "[A] fair trial in a fair tribunal is a basic requirement of due process."  In re
    Murchison, 349 U.S. 133, 136 (1955).  See also Hurles v. Ryan, 752 F.3d 768, 789 (9th Cir.
28  2014) (same).

15

1  due process . . . ." Id.

2      Petitioner is correct that he was entitled to have his parole release date considered by a

3  Board that was free of bias or prejudice.  See O'Bremski, 915 F.2d at 422.  However, petitioner

4  has completely failed to demonstrate that any Board member was actually biased against him or

5  that the 2004 parole suitability decision in his case itself was tainted by bias in any way.  The

6  mere fact that Commissioner Welch was one of five members of a classification committee at the

7  prison where petitioner was confined seven years or more prior to the challenged parole decision,

8  clearly does not demonstrate that any personal bias influenced Commissioner Welch's decision in

9  2004 finding petitioner unsuitable for parole.[4]  Similarly, the fact that Commissioner Welch was

10  the Facility Captain at petitioner's institution of confinement in 1997, without more, obviously

11  does not establish that Welch's decision at the 2004 parole suitability hearing was based on any

12  bias on his part against petitioner.  Petitioner's suggestions to the contrary are purely speculative

13  and unsupported by any evidence.[5]

14      The record before this court also belies petitioner's arguments of bias.  At the 2004

15  suitability hearing, Commissioner Welch stated that he was willing to give petitioner a parole date

16  if his file demonstrated he was suitable for parole.  (ECF No. 70-2 at 100.)  Commissioner Welch

17  sustained both of petitioner's objections to the inclusion of information regarding his prior prison

18  disciplinary convictions in the record before the Board and stated the Board would not use that

19  information in reaching its decision.  (Id. at 106-08.)  There is nothing in the parole hearing

20  transcript reflecting bias against petitioner on the part of Commissioner Welch or any other Board

21  panel member.  Rather, the record simply reflects that the panel members listened to the

22

23  [4]   In this regard, the court notes that the 1996 classification committee, of which Commissioner
24  Welch was a member, granted petitioner's request not to change his current program at that time.
    (ECF No. 71-2 at 1-2.)  Moreover, in 1997, that classification committee granted petitioner's
25  request to reduce his custody level.  (Id. at 3.)

26  [5]   Indeed, petitioner does not even allege a ground for actual bias on the part of Commissioner
    Welsh.  Rather, he argues only that Welsh "personally knew" petitioner as a result of the
27  positions Welsh served in years earlier at CSP-Sacramento.  (CEF No. 71-1 at 5.)  Apparently
    petitioner is asking the court to draw from this an inference of bias on the part of Commissioner
28  Welsh.  No such inference is warranted.

16

1    statements, arguments, and evidence provided by petitioner and his counsel (id. at 80-159) and

2    then rendered a decision based on their individualized assessment of the circumstances of

3    petitioner's case (id. at 160-67).[6]  Given this record, petitioner has failed to overcome the

4    "presumption of honesty and integrity" on the part of the Board members who rendered the

5    decision denying him parole.  See, e.g., Withrow v. Larkin, 421 U.S. 35, 47 (1975).  Petitioner's

6    argument appears to be, at least in part, nothing more than a challenge to the Board's 2004

7    finding that he was unsuitable for parole.  As explained above, any argument that the Board's

8    2004 suitability decision was not based on sufficient evidence is not cognizable in this federal

9    habeas action.  Swarthout, 562 U.S. at 220-222.

10         Petitioner's claim that the Board members at his 2004 parole suitability hearing were

11   arbitrary, unfair, biased, and unskilled in weighing the evidence before them and that he can

12   "never get a fair hearing" before a Board composed of "persons appointed by political favor

13   comprised of homicide detectives, crime victim backgrounds, ex-politicians between offices, all

14   with an agenda against the setting of a parole date" is vague and conclusory and should be

15   rejected on that basis alone.  See Lancaster v. Board of Prison Terms, 234 Fed. App'x 588, 589

16   (9th Cir. 2007)[7] (rejecting claim that Board was composed of a high number of ex-law

17   enforcement officials and hence was not representative of California populace, where petitioner

18   made no showing of bias); see also Scott v. Calderon, No. C 9704254 PJH(PR), 1998 WL

19   879681, at *4 (N.D. Cal. Dec. 9, 1998) (rejecting a constitutional claim that the Board of Prison

20   Terms panel was biased because the panel was comprised of "'ex-law enforcement officers,

21   officers, victims, and/or [persons] otherwise associated with the capture and punishment of

22   criminals'"); Vera v. Renico, No. 01-CV-73413-DT, 2002 WL 551014, at *1–3 (E.D. Mich. Mar.

23

24   ───────────────────

     [6]  In that decision, the Board panel acknowledged petitioner's progress since his imprisonment, ordered a new psychological evaluation prior to his next hearing, recognized that he had developed very good parole plans and had remained major disciplinary free.  Id. at 161-62.

25   However, the panel also described in a detailed fashion the reasons for its determination that petitioner was not suitable for parole at that time and what he need to accomplish in order to

26   become eligible for parole.  Id. at 162-66.

27

     [7]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule

28   36–3(b).

                                                    17

27, 2002) (rejecting a constitutional claim "that parole board members are biased against prisoners based upon their criminal justice backgrounds and the fact that they have 'dedicated their lives to sending citizens to prison for violating the law'"); Ragins v. Gilmore, 48 F. Supp.2d 566, 569–70 (E.D. Va. 1999) ("The Constitution places no limitations on who can serve as a member of a parole board based solely on the background of the official. [citations]."); United States ex rel. Devine v. Fairman, 537 F. Supp. 883, 885 (N.D. Ill. 1982) ("petitioner's allegations related to the bias of the [parole] board members with prior law enforcement experience do not rise to the level of a due process violation").

In short, petitioner has come forward with no evidence demonstrating that any of the Board members at his 2004 parole suitability hearing were biased against him or that the Board's 2004 decision to deny him parole was the result of any bias or prejudice. The decision of the California courts rejecting petitioner's claim that his due process rights were violated at his 2004 suitability hearing because the Board members were arbitrary, unfair, or biased was not contrary to or an unreasonable application of the federal authorities cited above. Certainly the state courts' decision denying habeas relief as to this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, petitioner is not entitled to federal habeas relief with respect to his due process claim based upon the alleged bias of Board members.

**V. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

18

1    <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

2    1991).  In his objections petitioner may address whether a certificate of appealability should issue

3    in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing

4    Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

5    enters a final order adverse to the applicant).

6    Dated:  June 23, 2015

7

8    _____
     DALE A. DROZD
9    UNITED STATES MAGISTRATE JUDGE

10   DAD:8:
     Ontiveros1441.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28